IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARK LEROY DENCKLAU (1), EARL DEVERLE FISHER (2), KENNETH EARL HAUSE (4), RYAN ANTHONY NEGRINELLI (5), CHAD LEROY ERICKSON (6), and JOSEPH DUANE FOLKERTS (7),

Defendants.

Case No. 3:18-cr-00319-JO

March 5, 2019

Portland, Oregon

**Status Conference**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ROBERT E. JONES

UNITED STATES DISTRICT COURT SENIOR JUDGE

APPEARANCES

FOR THE PLAINTIFF:

Ms. Leah K. Bolstad
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

FOR DEFENDANT MARK LEROY DENCKLAU:

Mr. Erik E. Eklund
Law Office of Erik E. Eklund
333 S.W. Taylor Street, Suite 300
Portland, OR 97204

Ms. Lisa J. Ludwig
Ludwig Runstein LLC
333 S.W. Taylor Street, Suite 300
Portland, OR 97204

FOR DEFENDANT EARL DEVERLE FISHER:

Ms. Deborah S. Burdzik
Attorney at Law
1906 S.W. Madison Street, Suite 101
Portland, OR 97205

Mr. Ernest Warren, Jr.
Ms. Alicia Hercher
Warren & Sugarman
838 S.W. First Avenue, Suite 500
Portland, OR 97204

FOR DEFENDANT KENNETH EARL HAUSE:

Mr. Todd E. Bofferding
Attorney at Law
P.O. Box 539
Hood River, OR 97031

FOR DEFENDANT RYAN ANTHONY NEGRINELLI:

Ms. Dianna J. Gentry
Dianna J. Gentry, P.C.
6500 S.W. Macadam Avenue, Suite 300
Portland, OR 97239

Mr. Matthew A. Schindler
Attorney at Law
501 4th Street, Suite 324
Lake Oswego, OR 97034

FOR DEFENDANT CHAD LEROY ERICKSON:

Mr. Richard L. Wolf
Richard L. Wolf, P.C.
12940 N.W. Marina Way, Slip A
Portland, OR 97231

FOR DEFENDANT JOSEPH DUANE FOLKERTS:

Mr. Andrew M. Kohlmetz
Law Offices of Andrew M. Kohlmetz, LLC
741 S.W. Lincoln Street
Portland, OR 97201

Ms. Laurie Bender
Laurie Bender, P.C.
735 S.W. First Avenue, 2nd Floor
Portland, OR 97204

COURT REPORTER:

Bonita J. Shumway, CSR, RMR, CRR
United States District Courthouse
1000 S.W. Third Ave., Room 301
Portland, OR 97204
(503) 326-8188

(P R O C E E D I N G S)

(March 5, 2019; 11:03 a.m.)

THE COURT: Good morning, everybody. Please have a seat. We have -- Do you want to announce the case?

MS. BOLSTAD: Yes, Your Honor. Leah Bolstad for the United States. We're here in the matter of the United States v. Mark Leroy Dencklau, et al. It's Case No. 18-cr-319.

I can introduce the defense counsel or we could just go individually if you'd like.

THE COURT: Well, I have the names here, and I'll hand that -- Becky, you want to hand the list of who is who? That's -- the prosecution just gets one.

Now, in respect to this matter, I don't know if counsel has had the opportunity to obtain this. Judge David Carter on Thursday wrote an opinion and disposition.

Do you have that?

MS. BOLSTAD: No, Your Honor.

THE COURT: Do you have that? Well, it would be very helpful. I made copies for you. It's 51 pages long. It covers a lot of territory. Essentially, the history of the Mongols Nation involves a lot of issues that we'll be confronting in this litigation.

That big first position that he took was that the RICO situation -- corporate liability for individual acts of members -- was improper, and then that was reversed by the

Ninth Circuit. Judge Graber, I think, wrote the opinion. It's an unpublished opinion, and it will be -- it has since been -- Carter has since followed the Ninth Circuit and said that there is liability under RICO.

So that's about where we are. It's obviously current stuff I hope you'll find helpful.

The issue today is to determine where we are going. And so I'll ask the government to please state where you think we are and what we need to do today.

MS. BOLSTAD: Thank you, Your Honor.

There's a few topics I think we should cover today. Starting with where we are, this Court has already ordered that this case is a complex case. However, that order happened when there was only pending defendants Mr. Dencklau and Mr. Fisher. Now we have new defendants, and the order of complex case does not necessarily apply to those new defendants.

I've asked defense counsel if they have any objection for the new defendants to the complex case designation. I do not believe there is any defense objection to that order extending to their clients, but I'll let them speak for that.

THE COURT: Is there any objection to designating the remaining defendants as -- additional defendants as complex?

MR. SCHINDLER: Good morning, Your Honor. Matthew Schindler here on behalf of Ryan Negrinelli.

I do have an objection. I don't know that the case

is complex. So I've been appointed. I have a small production of discovery. The sum total of the discovery that I've been provided is one document with my client's name on it. So I've gotten some informal discovery that gives me some sense that these are incidents that took place over about four or five hours, maybe six hours, over the course of one night. Complex cases, from my experience in federal court, are ones involving millions of documents, maybe dozens and dozens of witnesses, 25 defendants sitting in the room, tens of thousands of pages of discovery.

If that's where we get to, then that's a complex case, but I can't say that right now, and I think I'm being asked to waive my client's speedy trial rights effectively without any real knowledge of what the scope of the case is. And, respectfully, the death penalty counsel are here to say that these things take a certain amount of time. And, I mean, I guess I understand that to some extent, but it seems to me that process is being driven by the government. And so ultimately they're responsible for making a decision about how the case proceeds, but to expect me then to stand up at first appearance and say, "I waive my client's speedy trial rights," I'm not prepared to do that, Your Honor. So I object.

THE COURT: Thank you.

Any objection from the other -- Please identify yourself and who you represent.

MR. WOLF: Good morning, Your Honor. Richard Wolf. I'm learned counsel for Chad Leroy Erickson.

And we do not object to this being designated a complex case. I was learned counsel in the prior capital case that was in this district, *USA v. David Joseph Pedersen*. Ms. Bender was counsel for the co-defendant, Ms. Grigsby. I'm unaware of any potential capital cases that have not been designated complex. There may be some, but I'm unaware of any.

THE COURT: Have we determined whether this is designated a capital case?

MS. BOLSTAD: It's like Mr. Wolf said, it's a potential capital case. The charges here trigger a death penalty analysis, and the decision is made back east, in Washington, D.C. The decision is not yet made.

THE COURT: That was my question.

MS. BOLSTAD: Yes.

THE COURT: What do we do with this? A potential issue is whether it's been officially designated. Have they given you any indication when they might make that decision?

MS. BOLSTAD: Your Honor, unfortunately, they do not respond with specific timelines. It is very unique to each defendant in the case. The four new defendants are newly submitted for that process. The two defendants, Mr. Fisher and Mr. Dencklau, have been in the process for a while now and we're awaiting word. I expect word as to those two defendants

within the next month or two.

THE COURT: Thank you.

MR. WOLF: Your Honor, to continue the -- as Ms. Bolstad said, the process is that the defendants that are facing potential capital charges get to make a presentation to the local U.S. Attorney's Office, then they travel back to Main Justice in D.C. and present to the capital case review committee, which then makes its recommendation to the attorney general, who has the ultimate decision about whether it is going to proceed as a capital case or noncapital case.

I can tell you that from the Capital Resource -- Federal Capital Resource Counsel, the average time nationally for that decision to be made has been 12.5 months from the time of indictment to the time that defendants make their presentation in D.C.

THE COURT: What's the time for the indictment as to your client?

MR. WOLF: The indictment was returned in November of 2018, and he was just arrested on it one month ago.

THE COURT: Thank you.

MR. WOLF: And so normally we don't know the nature of whether it's going to be a capital or noncapital case for roughly a year after the indictment. In the Pedersen-Grigsby case, it was longer than that. It was nearly 18 months because of complications that arose with discovery in that case.

So I hear Mr. Schindler's concerns, but Ms. Bolstad has indicated to us there's already 13,000 pages of discovery. I haven't seen any of it yet. I haven't had an opportunity. But I suspect that it is likely to be complex and continue to be a complex case if it's authorized as a capital case. So we don't object to that designation.

THE COURT: Thank you.

Counsel?

MR. KOHLMETZ: No objection for Mr. Folkerts, Your Honor, on the same points that Mr. Wolf raised.

THE COURT: Anybody else?

MR. SCHINDLER: If I might, Your Honor.

THE COURT: Wait until I get back to you.

MR. SCHINDLER: Thank you, Judge.

THE COURT: Anybody else?

MS. BOLSTAD: Mr. Bofferding.

MR. BOFFERDING: Your Honor, I represent Mr. Hause. He does not object to a complex case designation.

MR. WARREN: Your Honor, I represent Mr. Fisher. He's already consented to a complex case designation.

THE COURT: Thank you.

Is that it?

MR. EKLUND: Your Honor, Erik Eklund for Mr. Dencklau. We're in the same posture as Mr. Fisher is, as Mr. Warren indicated.

I would like to say in response to some of Mr. Wolf's comments that some of our clients are in different postures than some of the others. My client has been continually incarcerated --

THE COURT: Excuse me. I cannot hear you without a mic.

MR. EKLUND: I just want to put on the record, Your Honor, Mr. Dencklau has been continually incarcerated on essentially the same charges since April of 2016. The discovery, the 13,000 pages that was provided to us is essentially the same discovery that we had in the state case. So we have conceded the complex case designation, but I do have speedy trial concerns also. That's all.

THE COURT: Thank you.

Anything further?

Thank you.

Did you want to say something?

MR. SCHINDLER: Yes, please, Your Honor. Matt Schindler again for Mr. Negrinelli.

The government has told us that the local prosecutors don't want to execute Mr. Negrinelli. They don't want to do it. So he has to sit for a year in jail while a bureaucrat in D.C. decides whether or not that's appropriate? I just think that's outrageous. I mean, really.

This prosecutor right here is prosecuting dozens and

dozens and dozens of violent crimes. If she says these guys don't merit execution, the idea that somebody from Washington, D.C. is just going to show up and go, "I'm sorry, that's not right," seems outrageous to me. And then we should just sit while our client sits in jail, his 14-year-old daughter, a guy who has worked, with no criminal history, and because these bureaucrats can't make a decision? That's not fair, Judge, and I think that the pressure should be on them to get rid of this death penalty now. Get rid of it. They don't want it. Why are we doing it?

THE COURT: Thank you.

MS. BOLSTAD: Your Honor, if I may. It sounds like, to summarize, the only objection to a complex case designation is by Mr. Schindler on behalf of Mr. Negrinelli. I would suggest that in order to make a decision on his objection -- you have the government's motion. We filed a written motion for a complex case. Perhaps the defense for Mr. Negrinelli could respond in writing with law and analysis of why this should not be a complex case, and then Your Honor could make a decision as to his client.

As to everyone else, I would ask for the Court to order complex case.

THE COURT: I'm going to order a complex case as to all defendants.

The next issue: If we are dealing with the direct

murder charges and then we have the separate issue of the RICO issue, the -- is there anticipation that they will be segregated?

MS. BOLSTAD: No, Your Honor, and precisely because the murder case, the kidnap and murder form predicate offenses that form the basis of the RICO as to multiple defendants in this case. So they're very much intertwined.

THE COURT: But won't the issues involving the RICO matter bring out collateral issues that would be inappropriate for the murder?

MS. BOLSTAD: No, Your Honor. I can see why you would ask that, but in order to prove a violent crime in aid of racketeering -- and that's what is charged, the murder is a violent crime in aid of racketeering -- the government is required to prove as elements of that murder that it was in furtherance of a racketeering enterprise. So it's very much interrelated.

THE COURT: Thank you.

The next question is, having had the designation of being complex, what is your projection on timing?

MS. BOLSTAD: On timing, Your Honor, we've had multiple conferences. I've met in January with some of the prior defense attorneys who have been in this case for a while. And just this morning I had the pleasure of meeting with the attorneys on the new defendants.

Given what Mr. Wolf stated -- which I am in full agreement with -- this is going to be a process that takes time. I am open to ideas about setting trial dates. I'm also open to the idea of simply setting out a future status conference, perhaps a conference in a few months, after we might have more clarity on the decision from Washington, D.C.

At that point, when we know it's an up or down on the death penalty, I think at that point it makes it much easier to set a realistic trial date.

MR. WOLF: I would concur with that, Your Honor. Richard Wolf again for Mr. Erickson. Until we know whether this is going to be a capital case or not, we don't even know how many counsel are going to be involved. There is certainly -- has been precedent for when a case has not been authorized as a capital case for learned counsel to be removed from the case, and so if that were to happen in these combined cases, that's half the lawyers' schedules that you would need to be concerned about.

And I can tell the Court, in our conference this morning with Ms. Bolstad, myself, I have a -- we were proposing a date for -- if it were a noncapital case, of March of 2020, and if I were to be involved, I have a capital case starting in Washington County in mid January. I know that Ms. Burdzik has a capital case beginning in --

MS. BURDZIK: May of 2020. Deborah Burdzik on behalf

of Mr. Fisher.

MR. WOLF: -- May, and then Ms. Gentry has a capital case.

MS. GENTRY: In June of 2020, for three months.

MR. WOLF: To the government and to many of us, it seems to make sense to set a status conference for the summer, figure out is this proceeding as a capital or noncapital case, because if it's noncapital, I think it could be set sooner than if it were to proceed as a capital case.

THE COURT: Thank you.

As far as the issue of having everybody almost brought to a standstill, waiting until the government decides, the Department of Justice decides whether it's a capital case or not, I'm going to set a limit for them of 60 days, and they will be requested by this Court to make that decision.

If they want to be heard on that, I would welcome any response. You'll communicate that to them?

MS. BOLSTAD: Yes, Your Honor.

THE COURT: Then I'll set a status report -- excuse me, a status hearing. What date do you suggest?

By the way, Judge David Carter happens to have Oregon roots. I talked to him yesterday. He said that he had been in trial on the RICO issue for weeks and weeks and weeks. Its complexity was enormous. So we aren't talking about something that can be done in a short order. We're looking at a

prolonged trial.

Yes, ma'am? You're going to suggest a date for the next status conference?

MS. BOLSTAD: Your Honor, I would suggest a date in mid May, perhaps the 16th of May. That will be just after the 60 days that you've listed.

THE COURT: That's fine. Everybody mark that, and if you're tied up, why you can get a -- have somebody stand in for you.

MR. WARREN: Okay, Your Honor, because -- Ernest Warren on behalf of Mr. Fisher. Because this is a potential death penalty case, we are scheduled for a death penalty seminar that we paid for in Colorado at that date.

THE COURT: Oh, on that date?

MR. WARREN: Yes.

THE COURT: We'll move it, then. That date is not firm. Whatever works out for you. What day is best for you?

MR. WARREN: The following week, the 21st is okay, Your Honor. Just the following week.

THE COURT: Roughly is --

MS. BOLSTAD: The 21st of May?

MR. WARREN: Yes.

THE COURT: That would be fine.

MR. WOLF: That works for Mr. Erickson as well, Your Honor.

MR. WARREN: Thank you, Your Honor.

MR. WOLF: Your Honor, again Richard Wolf for Mr. Erickson. I appreciate the Court's desire to expedite the decision regarding the -- whether it's a capital case or not. I question whether Main Justice is going to be able, A, to accomplish that.

THE COURT: Well, if they can't, I may take some other tactic. I'm trying to get a disposition so we aren't just sitting around here waiting for somebody back there in D.C. to make up their mind. They have the facts of the case. They should be able to look at it and say yes or no. And that's -- that is -- that part should not take the times that we're hearing about.

MR. WOLF: But what they don't have, Your Honor, is the defendant's -- each individual defendant's reasons and mitigation to consider as to whether or not they want to authorize the case. And that's the part that takes the time, us gathering that information, and then actually scheduling and going -- because the protocol calls for each of us to go to Main Justice and make that presentation.

And so the idea that we would be able to do that and for them to incorporate it and make that decision within 60 days seems quite ambitious, and especially given the fact that Attorney General Barr has just been nominated -- just been confirmed. I gather that there is a backlog -- Ms. Bolstad can

speak to this, but I'm suspecting that there is a backlog of authorization decisions from around the country that the attorney general is going to have to make before he gets to these cases.

So I just wanted the Court to be aware that the concern is not so much the government knowing what they know about their facts, but them not knowing about our mitigation.

THE COURT: Yes. Well, the dates I set will stay and the people can work around dates. We do that constantly. If they make out a case that's convincing, I can reconsider. But on the surface, whether it's a capital case is not a complicated decision. You can come in and say whatever your defenses potentially would be, but what makes it a capital case or not is not a complicated decision. So that's where I am.

MR. WOLF: Thank you, Your Honor.

THE COURT: At least on the surface.

Now, is there further matters as far as the government is concerned that you want to clarify or take up today?

MS. BOLSTAD: Not from the government, Your Honor.

THE COURT: From -- further from the defense?

MR. SCHINDLER: Yes, Your Honor, just one more thing.

THE COURT: Sure.

MR. SCHINDLER: We've set a status conference out to --

THE COURT: Would you hand him the mic, please.

THE CLERK: He has a mic right there.

Just sit down and speak into it.

MR. SCHINDLER: I'll just speak up a little.

THE COURT: I can't imagine asking you to speak up.

MR. SCHINDLER: It's not usually a problem for you to hear me.

THE COURT: Have a seat, have a seat.

MR. SCHINDLER: We've set a status conference out now quite a ways, and one of the concerns that I have echoes Mr. Eklund's concern, which is that this is a case that was prosecuted by the state. They were prepared to go to trial in the state. And so I understand where you're dealing with a Title III wiretap case and 25, you know, cartel members. The government is going to take months and months, obviously, in some of those cases to get those materials together and to provide discovery.

I don't think that's appropriate in this case. And so I'm -- I don't know that we need to set a deadline, but I think I want just the Court to be aware that it may be necessary for us to have a status conference before that one to discuss discovery issues if the government is not moving quickly to produce materials.

THE COURT: As you know, we've had a lot of cases together.

MR. SCHINDLER: Yes.

THE COURT: If you have a discovery issue, just call up and I'll handle it.

MR. SCHINDLER: Will do.

THE COURT: As you go along, if anybody has an issue, I'm here. We'll just do it on telephone conference or on the record, or you want a hearing, we're available any time in the interim.

Anything further from anybody?

Thank you all for coming. I appreciate it.

Court is in recess.

(Proceedings concluded at 11:28 a.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature or conformed signature is not certified.

*/s/Bonita J. Shumway* — *March 20, 2019*

BONITA J. SHUMWAY, CSR, RMR, CRR — DATE
Official Court Reporter